

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00198-CR

———————————————————

BRYAN ISADORE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1554206D

---

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

A jury convicted Appellant Bryan Isadore of sexual assault of a child and indecency with a child by contact and assessed his punishment at 20 years' confinement and a $5,000 fine on the sexual-assault count (Count Two) and 12 years' confinement and a $2,500 fine on the indecency-with-a-child count (Count Three). *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.011(a)(2)(D). The trial court sentenced Isadore accordingly, ordering that the sentences be served consecutively. In five issues, Isadore contends:

- The trial court lacked personal jurisdiction over Isadore after the State waived the first count in the indictment (Issue Three);

- The waiver of the first count in the indictment resulted in insufficient evidence that Isadore committed any offense (Issue Four);

- The trial court abused its discretion by limiting Isadore's cross-examination of a key State's witness on issues affecting her credibility (Issue Two);

- The trial court abused its discretion by admitting hearsay testimony from the sexual-assault nurse examiner (SANE) (Issue Five); and

- The trial court abused its discretion by invalidly cumulating Isadore's two sentences (Issue One).

Because we hold that the trial court did not reversibly err, we affirm the trial court's judgments as modified.

2

# I. BRIEF FACTS[1]

The jury heard evidence that Isadore sexually abused Zachary,[2] the complainant, when he was fourteen years old. The evidence showed that Zachary drank alcohol at a friend's birthday party held in Isadore's home. Zachary passed out on the bed in the master bedroom and awoke to Isadore's anally penetrating him. At trial, Zachary did not remember whether Isadore's hand had also touched Zachary's penis and did not remember telling anyone that Isadore had grabbed it. The SANE testified that when she examined Zachary the day after the party, he told her that Isadore had committed both acts. DNA analysis of perianal swabs collected from Zachary during that examination implicated Isadore as the person who committed the sexual assault.

# II. DISCUSSION

## A. THE INDICTMENT

In his third issue, Isadore contends that the trial court lacked personal jurisdiction after the State waived Count One of the indictment. Before voir dire and

---

[1]Other than Isadore's fourth issue wholly relying on his contention that the indictment is defective—a contention we reject in our resolution of his third issue—Isadore does not challenge the sufficiency of the evidence supporting his convictions. We therefore omit a detailed statement of facts. Relevant facts are discussed in the analyses of the issues.

[2]We use an alias to protect the identity of the complainant, who was a minor when the offenses were committed. *See* Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7.

outside the jury panel's presence, Isadore was arraigned on the following three counts of the indictment, the prosecutor read them into the record, and Isadore pled not guilty:

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS OF TARRANT COUNTY, TEXAS, DULY ELECTED, TRIED, EMPANELED, SWORN, AND CHARGED TO INQUIRE OF OFFENSES COMMITTED IN TARRANT COUNTY, IN THE STATE OF TEXAS, UPON THEIR OATHS, DO PRESENT . . .

THAT BRYAN ISADORE, HEREINAFTER CALLED DEFENDANT, ON OR ABOUT THE 29TH DAY OF JULY 2017, IN THE COUNTY OF TARRANT, STATE OF TEXAS, DID INTENTIONALLY OR KNOWINGLY CAUSE THE SEXUAL ORGAN OF THE DEFENDANT TO CONTACT THE ANUS OF [ZACHARY], A CHILD YOUNGER THAN 17 YEARS OF AGE AT THE TIME OF THE OFFENSE REGARDLESS OF WHETHER THE DEFENDANT KNOWS THE AGE OF [ZACHARY], AND, WITH THE INTENT OF FACILITATING THE COMMISSION OF THE OFFENSE, PROVIDE TO [ZACHARY] A SUBSTANCE CAPABLE OF IMPAIRING [ZACHARY'S] ABILITY TO APPRAISE THE NATURE OF THE ACT OR TO RESIST THE ACT, TO[]WIT[,] ALCOHOL,

COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 29TH DAY OF JULY 2017, DID INTENTIONALY OR KNOWINGLY CAUSE THE SEXUAL ORGAN OF THE DEFENDANT TO CONTACT THE ANUS OF [ZACHARY], A CHILD YOUNGER THAN 17 YEARS OF AGE REGARDLESS OF WHETHER THE DEFENDANT KNOWS THE AGE OF [ZACHARY],

COUNT THREE: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 29TH DAY OF JULY 2017, DID INTENTIONALLY, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF ANY

PERSON, ENGAGE IN SEXUAL CONTACT BY TOUCHING ANY PART OF THE GENITALS OF [ZACHARY], A CHILD YOUNGER THAN 17 YEARS OF AGE REGARDLESS OF WHETHER THE DEFENDANT KNOWS THE AGE OF [ZACHARY],

AGAINST THE PEACE AND DIGNITY OF THE STATE.

After the jury was sworn, the State waived Count One.[3] The prosecutor then read the live indictment aloud in the jury's presence, and Isadore pled not guilty to Counts Two and Three before the jury. Only after the prosecution rested its case two days later did defense counsel move for an instructed verdict based on the State's waiver of Count One. The trial court overruled the motion.

In his third issue, Isadore contends that the trial court lost personal jurisdiction over him after the State waived Count One of the indictment because Count One is the only count that names him as the defendant: "Bryan Isadore, hereinafter called defendant." The remaining two counts refer to "the defendant" but do not identify him by name. Isadore argues that the absence of his name from the live counts results in a defective indictment and inadequate notice that he was charged with a felony. Isadore is wrong on both points.

This case is controlled by *Jenkins* and *London*. *Jenkins v. State*, 592 S.W.3d 894, 898–903 (Tex. Crim. App. 2018); *London v. State*, 739 S.W.2d 842, 843–45 (Tex. Crim. App. 1987).

_____

[3]The State also waived the clause "regardless of whether the defendant knows the age of [the complainant]" from the remaining two counts.

*First*, accepting without deciding that the mere waiver of a single indictment count from a multicount indictment after trial begins could displace personal jurisdiction, we hold that the trial court retained personal jurisdiction over Isadore after the State waived Count One. In *Jenkins*, Jenkins argued successfully to our sister court that the trial court lacked jurisdiction because the sole count alleged against him did not "name 'a person'" but referred only to "the defendant." *Jenkins v. State*, 537 S.W.3d 696, 697, 698 (Tex. App.—San Antonio 2017), *rev'd*, 592 S.W.3d at 903. However, the Texas Court of Criminal Appeals reversed. *Jenkins*, 592 S.W.3d at 903. In its opinion, the Court explained what an indictment must accomplish to vest jurisdiction in the trial court:

> The presentment of a valid indictment vests the district court with jurisdiction of the cause. A trial court's jurisdiction over a criminal case consists of the power of the court over the subject matter of the case, coupled with personal jurisdiction over the accused. Unlike in civil cases, where personal jurisdiction over a party may be had merely by that party's appearance before the court, criminal jurisdiction over a person requires the filing of a valid indictment or information.
>
> Even if an indictment has a substantive defect, it can still qualify as an indictment that vests a district court with jurisdiction. However, if an indictment is so defective that it does not meet the constitutional definition of an indictment, it does not vest the court with jurisdiction. To meet the definition of indictment under article V, section 12(b) of the Texas Constitution and to vest the court with both personal and subject matter jurisdiction, the indictment must (1) charge a person, and it must (2) charge the commission of an offense.

*Id.* at 898 (footnotes and internal quotation marks omitted). In deciding whether those two constitutional requirements are met, "the proper test is whether the face of

the charging instrument is clear enough to give an appellant adequate notice of the charge against him." *Id.* at 901 (citations omitted). The Texas Court of Criminal Appeals held that the *Jenkins* indictment met the test and that the trial court had both personal and subject-matter jurisdiction. *Id.* at 901–02. As proof, the Court pointed to the caption's naming Jenkins as the defendant: "Defendant: Deondre J Jenkins," and the presence in the caption of "his address, his 'SID' number, the cause number, the filing date of the indictment, the complainants'[] names, the specific offense charged, and which court the case was assigned to." *Id.*

In the case before us, Isadore's name, race, gender, age, date of birth, and "CID" number appear in the caption, as do the case number, the charged offense, the alleged offense date, Zachary's name as the "IP" (injured party or complainant), the law enforcement agency, and assigned trial court. While Isadore's name in the caption is not accompanied by "defendant," his name appears in the style in the spot reserved for defendants: "The State of Texas vs. Bryan Isadore." Finally, the waived Count One naming Isadore and stating that he would "hereinafter [be] called defendant" remains on the face of the live indictment. We therefore hold that the face of the live indictment continued to provide adequate notice to Isadore that he was the defendant charged therein, and we further hold that the indictment continued to charge a person—Isadore—with committing an offense and thus the trial court retained personal and subject-matter jurisdiction. *See id.* There is no jurisdictional defect. *See id.*

7

*Second*, the indictment here is not defective in form or substance. In *London*, the prosecution dismissed the indictment's first count, the only count naming London as the defendant. He was convicted of theft in the remaining count, which alleged only that "the Defendant" committed the offense. London argued on appeal that the indictment was fundamentally defective for failing to state his name. *London*, 739 S.W.2d at 843. The Texas Court of Criminal Appeals held that "[a]lthough count one of the indictment was dismissed, it could still be looked to in order to satisfy the requirement of naming [the defendant] as the person who allegedly committed the theft" charged in the live count. *Id.* at 844. "The count of the indictment on which the jury found [the defendant] guilty was therefore not deficient." *Id.*

Here, despite the State's waiver of Count One, we can still look at Count One to satisfy the requisites of an indictment. *See id.* Specifically, we can rely on Count One for Isadore's name to satisfy the requirement of naming the accused in Counts Two and Three. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 21.02(4). Thus, even after the State's waiver of Count One, the indictment is not defective in form or substance.[4] *See London*, 739 S.W.2d at 844; *see also* Tex. Code Crim. Proc. Ann. art. 21.02(4).

---

[4]Even if the State's waiving of Count One had created a defect of form or substance after trial began, Isadore objected too late. He forfeited any right he may have had to object to a defect of form or substance by waiting to object until after the State rested two days later. *See Jenkins*, 592 S.W.3d at 902 (holding defendant forfeited his right to complain about an indictment defect when he waited to object until the second day of trial); *cf. Do v. State*, 634 S.W.3d 883, 896 (Tex. Crim. App. 2021)

8

Having held that the trial court retained jurisdiction despite the State's waiving Count One and that the live indictment was not defective, we overrule Isadore's third issue.

## B. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Isadore contends that the waiver of Count One resulted in insufficient evidence to show that he committed any offense at all because his name did not appear in the live counts and the counts therefore failed to authorize a conviction. This issue is wholly dependent on Isadore's assertion that the indictment is defective, an assertion that we rejected above in our resolution of his third issue. We therefore summarily overrule Isadore's fourth issue. *See* Tex. R. App. P. 47.1.

## C. EXCLUDED IMPEACHMENT EVIDENCE

In his second issue, Isadore contends that the trial court erred by restricting his cross-examination of forensic DNA analyst Trisa St. Clair, a former employee of the Fort Worth Police Department Crime Lab, "on subject matter that would affect her credibility as a witness." For the reasons explained below, we hold that Isadore forfeited any error.

---

("[W]hen the State read the charging instrument, [the defendant] was on notice that the State had failed to read an allegation that [he] believed to be an element of the offense. If the allegation was in fact an element, then the State's reading of the charging instrument was defective, and [the defendant] could have objected at that time. Having failed to do so, he forfeited any error.").

9

St. Clair had worked on Isadore's case as an employee and testified for the State as an expert. Before testifying in front of the jury, St. Clair testified outside the jury's presence that she had filed a complaint against the Crime Lab and had later been fired in April 2021, more than two years after the work she performed for the Crime Lab in this case. When asked why she was fired, St. Clair responded, "The quote is because my testimony is problematic." In seeking to pursue her termination before the jury, defense counsel argued that St. Clair's being "terminated for problematic issues with her testimony [went] to [her] credibility." The trial court asked St. Clair for clarification: "What do you mean problematic—problems with your testimony?" She replied, "I believe my letter included—because of the allegations I had made, my testimony is problematic. My cases would have to be retested. They'd have to get a new expert to testify." Further dialogue between St. Clair and the trial court clarified that the "allegations" she referenced in her testimony were those she had raised in her complaint about the Crime Lab. Isadore's bill submitted the day after the initial ruling shows that the "letter" was the police department's letter of formal notification to St. Clair that it was considering firing her and that St. Clair's clarification of "allegations" as used in the letter was accurate.

The trial court ruled that St. Clair's testimony was "problematic" "because of the complaint she made and the complications arising from that. It's not . . . an attack on her credibility by Fort Worth PD Crime Lab." The trial court ultimately decided that Isadore was seeking to improperly impeach St. Clair "on a collateral matter,

10

which is essentially the same as relevance," and prohibited Isadore from pursuing that line of questioning in front of the jury. However, the trial court ruled that St. Clair's fee structure as a private contractor—"$3,000 flat rate for testifying, $300 an hour for any case review" and "anything about her compensation"—was "fair game." In the jury's presence, St. Clair testified on the State's direct examination that she made $3,000 for testifying; Isadore never asked her any questions related to compensation.

Isadore complains that the trial court improperly limited his cross-examination of St. Clair by preventing him from delving into why the City of Fort Worth fired her, but for the first time on appeal, he contends that his purpose in pursuing that line of questioning regarding her termination was to reveal her profit motive in testifying for the State:

> Had Appellant been allowed to ask his questions the jury would have heard considerable evidence that St. Clair had a personal interest in testifying favorably to the State so that she could make money. St. Clair's motive to make money is admissible evidence. St. Clair testified in front of the jury that she was making $3[,]000 for her testimony in the case. . . . She had earlier testified out of the presence of the jury that she had an arrangement with the Tarrant County Criminal District Attorney's office to be paid "$3[,]000 flat rate for testifying, and $300 per hour for any case review. . .[ .]" . . . Factoring in the princely rate that she commanded for testifying, Ms. St. Clair had an obvious motive for testifying in a way that was satisfactory to the State and the police department; namely that the more they were satisfied with her testimony the more they would call her to testify. Simply put, the more St. Clair testifies, the more money she earns. The jury should have heard the facts of St. Clair's termination from the crime lab so that they could weigh her motive to testify favorably for the party that was paying her $3[,]000 for a small amount of work.

Isadore has forfeited this appellate issue.

11

Generally, a defendant forfeits constitutional errors by failing to object at trial. *Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018). We overrule as forfeited that portion of his issue alleging constitutional error because Isadore does not reference, nor have we found in the record, any constitutional objection to the exclusion of the evidence or restriction of his cross-examination at trial. *See id.* at 670.

We overrule the remainder of this issue as forfeited because it does not comport with his trial complaint. The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

At trial, based on St. Clair's voir dire testimony that her termination resulted from her testimony being "problematic," Isadore wanted to pursue why the Crime Lab terminated her before the jury to attack her credibility as a witness. On appeal, he claims that he wanted to pursue why the Crime Lab terminated St. Clair to highlight

12

her profit motive for testifying, a purpose he never revealed to the trial court and a motive that he could have freely explored before the jury but chose not to. The complaint on appeal does not comport with the trial complaint. We therefore overrule Isadore's second issue as forfeited.

### D. ADMISSION OF THE SANE'S TESTIMONY SUPPORTING THE OFFENSE OF INDECENCY WITH A CHILD

In his fifth issue, Isadore complains that the trial court abused its discretion by admitting the SANE'S testimony that Zachary told her that Isadore had grabbed the teenager's penis. We review the admission of evidence for an abuse of discretion, which occurs only when the ruling falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). We will uphold the trial court's correct decision under any applicable legal theory even if the trial court gave a wrong or incomplete reason for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

When the prosecutor asked the SANE if Zachary had indicated that "his penis was grabbed," defense counsel objected under the Confrontation Clause and to hearsay, pointing out mistakenly that Zachary had testified that it did not happen.[5] The trial court overruled the objection and allowed defense counsel to make a running

---

[5]In fact, more than four years after the SANE examination, Zachary had testified that he did not remember Isadore's grabbing it and that he did not remember telling anyone that Isadore had done so.

objection. The State argues that the general hearsay objection did not preserve Isadore's appellate complaint. Usually, a hearsay objection sufficiently prompts the proponent of the evidence to show that it is not hearsay or that it meets an exception. *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994); *Gutierrez v. State*, 630 S.W.3d 270, 279 (Tex. App.—Eastland 2020, pet. ref'd). At trial, Isadore wanted the statement excluded as hearsay because it did not match Zachary's testimony. Here, Isadore complains that the veracity prong of the Rule 803(4) hearsay exception was not satisfied. Given the objection, the complained-of evidence, and the state of the record, we decline to hold the issue forfeited.

Under Rule 803(4) of the Texas Rules of Evidence, the trial court may admit into evidence statements "made for—and . . . reasonably pertinent to—medical diagnosis or treatment" that "describe[ ] medical history; past or present symptoms or sensations; their inception; or their general cause" even though they are hearsay. Tex. R. Evid. 803(4). For evidence to be admissible under this exception, the proponent normally must show (1) that the declarant "was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements" and (2) "that the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant." *Lumsden v. State*, No. 02-16-00366-CR, 2018 WL 5832112, at *16 (Tex. App.—Fort Worth Nov. 8, 2018, pet. ref'd) (citing *Taylor v. State*, 268 S.W.3d 571, 588–89, 591 (Tex. Crim. App.

14

2008)).  Isadore challenges only the first prong of the test.  He contends that the SANE's testimony does not fall within the hearsay exception because the State failed to show that Zachary "appreciated or understood that proper diagnosis or treatment depended on the veracity of his statements."  However, the State was not required to make such an affirmative showing here.

In cases like this one, which involve medical diagnosis and treatment, not mental health treatment or therapy, courts generally presume that "children of a sufficient age or apparent maturity" will understand that the medical provider frames questions to obtain accurate information and that veracity will serve their best interest. *Taylor*, 268 S.W.3d at 589.  Thus, in applying the test, courts generally review the record for "evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.*  Absent such negative evidence, the Texas Court of Criminal Appeals does "not require[] the proponent of statements to a SANE to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity." *Lumsden*, 2018 WL 5832112, at *16; *see Taylor*, 268 S.W.3d at 589.

Our review of the record shows that Zachary knew that the purpose of the examination was diagnosis and treatment.  Specifically, the SANE testified that her typical procedure would have been to tell him that her job was "to make sure [his] body [was] okay" and that she "need[ed] to know . . . anything that [was] pertinent to [his] medical care like concerns of injury."  In her handwritten patient history, she

15

"wrote verbatim what he told" her.  He told her that he "underst[ood] he [was there] for the purposes of diagnosis and treatment."  Further, although the SANE did not explicitly tell Zachary that he needed to tell the truth in the physical examination, we are convinced by our review of the record that the then fourteen-year-old was of sufficient age and maturity to realize that he needed to be truthful during the SANE examination.  *See Lumsden*, 2018 WL 5832112, at *19; *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd) ("[C]ourts can infer from the record that [a child complainant] knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis."); *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd) ("[T]here is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply.").  *But see Louisville v. State*, No. 02-16-00332-CR, 2018 WL 5668526, at *7–8 (Tex. App.—Fort Worth Nov. 1, 2018, pet. ref'd) (mem. op., not designated for publication) (holding SANE's testimony of a child complainant's statements inadmissible when evidence demonstrated the child complainant had a propensity to lie and did not demonstrate her awareness that her statements were for diagnosis and treatment or that proper diagnosis and treatment depended on her honesty).  Zachary's statements to the SANE therefore satisfy the first prong of the admissibility test, the only prong at issue.  Accordingly, the trial court did not abuse its discretion by admitting the evidence.  We overrule Isadore's fifth issue.

## E. CUMULATION ORDER

In his first issue, Isadore complains that the trial court abused its discretion by "invalidly" cumulating his sentences. He contends that the trial court failed to enter a sufficient written cumulation order, that a separate cumulation order from the judgment was required, that no basic information was included in a written cumulation order, that "the only recitation in the judgment pertaining to cumulation is the single line in the judgment for each count that "THIS SENTENCE SHALL RUN CONSECUTIVELY," and that "[t]he judgments do not state what sentence each count shall run consecutively to, . . . do not name the cause number, court or county of the other conviction[, and] . . . fail to even recite which of the two convictions will commence first." Isadore contends that the cumulation order must be vacated. He also contends that the cumulation language in each judgment should be deleted and the judgments modified to reflect concurrent sentences.

We review an order to cumulate sentences for an abuse of discretion. *See* Tex. Penal Code Ann. § 3.03(b)(2)(A); Tex. Code Crim. Proc. Ann. art. 42.08(a); *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008); *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006); *Robles v. State*, No. 02-21-00131-CR, 2022 WL 3097288, at *3 (Tex. App.—Fort Worth Aug. 4, 2022, no pet.). Isadore does not question the trial court's decision to cumulate, just its implementation.

Section 3.03 of the Penal Code affords the trial court discretion to impose consecutive sentences for certain types of sexual offenses committed against someone

17

younger than seventeen years of age. Tex. Penal Code Ann. § 3.03(a), (b)(2)(A). The trial court therefore had discretion to cumulate Isadore's sentences. *See id.*

The trial court's oral pronouncement of a cumulation order controls over a written cumulation order. *Sullivan v. State*, 387 S.W.3d 649, 652 (Tex. Crim. App. 2013). When the oral pronouncement does not clearly reveal the trial court's intent, we will remand the case for the trial court to modify its order. *Id.* at 652, 653. Here, though, the trial court's intent was clear. *See id.* at 653. After the jury assessed Isadore's two sentences, the trial court orally ordered that they would run consecutively: "Furthermore, each of these sentences, 20 and 12, will run consecutive. You having been sentenced to the 20-year sentence in count two, it will run first, then the second sentence, count three, will begin."

The written cumulation orders contained in the judgments indicate that the trial court wanted the sentences to run consecutively, but the language is not as clear as the language in the oral pronouncement.[6] Each of the two judgments states, "THIS SENTENCE SHALL RUN CONSECUTIVELY." The Count-Two judgment states, "COUNT TWO TO RUN CONSECUTIVELY WITH COUNT THREE." The

---

[6]Isadore argues with scant support that the trial court's cumulation orders should have been separate from the judgments. The text of the statute does not require a separate written order. *See* Tex. Code Crim. Proc. Ann. arts. 42.01, 42.08. *See generally* George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 46:152 (3d ed. 2011 & Supp. 2022) ("Often, a trial court will make an oral cumulation order as part of the penalty hearing and have it reduced to writing later as a separate order and/or as part of the judgment in the case.").

Count-Three judgment states, "COUNT THREE TO RUN CONSECUTIVELY WITH COUNT TWO." Isadore is therefore correct that the written cumulation orders do not indicate which sentence shall run first, and we sustain his first issue only to that extent. He is incorrect as to the remedy.

As this court recently explained in *Robles*, a written cumulation order should be specific enough taken alone to inform prison officials of how to apply a prisoner's sentences:

> A trial court may order sentences to run consecutively by using language that is sufficiently specific to enable prison authorities to know how long to detain the prisoner under the sentences. *Stokes v. State*, 688 S.W.2d 539, 540 (Tex. Crim. App. 1985); *see* Tex. Code Crim. Proc. Ann. art. 42.08(a). The Texas Court of Criminal Appeals recommends that cumulation orders contain five elements: (1) the trial-court cause number of the prior conviction; (2) the correct name of the court where the prior conviction was taken; (3) the date of the prior conviction; (4) the term of years of the prior conviction; and (5) the nature of the prior conviction. *Stokes*, 688 S.W.2d at 540; *Ward v. State*, 523 S.W.2d 681, 682 (Tex. Crim. App. 1975). Inclusion of all five recommended elements is not mandatory. *Stokes*, 688 S.W.2d at 540. But the order should be sufficiently clear so that it may be understood without having to refer to other evidence. *See id.* (citing *Ex parte Lewis*, 414 S.W.2d 682, 683 (Tex. Crim. App. 1967)).

*Robles*, 2022 WL 3097288, at *3. When a written cumulation order is not sufficiently clear, an appellate court may modify the order and affirm as modified if the record contains the necessary information. *Id.*; *see Banks v. State*, 708 S.W.2d 460, 461–62 (Tex. Crim. App. 1986) (concluding that appellate court can modify a deficient cumulation order if the trial court's oral pronouncement contains sufficient information); *see also* Tex. R. App. P. 43.2(b).

19

Because the oral pronouncement clearly shows the trial court's intent that Isadore serve the Count-Two sentence first and then the Count-Three sentence, we delete the following language from the Count-Two judgment: "COUNT TWO TO RUN CONSECUTIVELY WITH COUNT THREE," and we delete the following language from the Count-Three judgment: "COUNT THREE TO RUN CONSECUTIVELY WITH COUNT TWO." We further modify each judgment by adding the following language after "THIS SENTENCE SHALL RUN CONSECUTIVELY":

> The sentence imposed by the 297th District Court on December 3, 2021, in Count Two in cause number 1554206D for sexual assault of a child under 17 years of age (20 years) shall begin to run immediately. The sentence imposed by the 297th District Court on December 3, 2021, in Count Three in cause number 1554206D for indecency with a child by sexual contact (12 years) shall commence when the sentence imposed in Count Two in cause number 1554206D has ceased to operate.

*See, e.g.*, *Robles*, 2022 WL 3097288, at *4.

### III. CONCLUSION

Having sustained only a portion of Isadore's first issue and having overruled the remainder of that issue along with his other four issues, we affirm the trial court's judgments as modified. *See* Tex. R. App. P. 43.2(b).

20

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 8, 2023